UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MONICA MARTINEZ LEAL,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>Defendant. | No. 1:22-cv-00759-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 13, 14)** |

I.      **Introduction**

Plaintiff Monica Martinez Leal ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.

II.      **Factual and Procedural Background[1]**

On February 12, 2018 Plaintiff applied for disability insurance benefits alleging a disability onset date of October 1, 2015.  AR 70.  The Commissioner denied the application initially on July 6, 2018 and on reconsideration on December 20, 2018.  AR 120–36, 138–54.  Plaintiff appeared for an initial hearing before an Administrative Law Judge (the "ALJ") on July 29, 2020 (AR 45-84) after which the ALJ issued an initial unfavorable decision dated September 1, 2020 (AR 156-80) which was subsequently vacated by the Appeals Council.[2]  AR 181–87.  The ALJ held a second hearing on September 8, 2021 (AR 85–119) and issued a second unfavorable decision (the operative

---

[1] The parties are well informed about the administrative record including the medical, opinion and testimonial evidence which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

[2] The Appeals Council vacated and remanded because 1) the ALJ made inconsistent references as to whether the exertional RFC was for light work or medium work (which has since been corrected), and 2) because the ALJ found Dr. Portnoff's consultative opinion persuasive but did not explain how the marked and moderate to marked limitations identified therein were consistent with the RFC (addressed in more detail below).  AR 183–85.

1

decision) on September 29, 2021 (AR 17–44).  The Appeals Council denied review on March 15, 2022.  AR 6–11.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of October 1, 2015 through her date last insured,  March 31, 2021.  AR 22.  At step two the ALJ found that Plaintiff had the following severe impairments: disorder of the spine; headaches; exogenous obesity; insomnia; major depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder.  AR 23.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 23–25.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567 (b) with the following limitations:

> Specifically, the claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; she can stand and or walk for eight hours and sit without limitation in an eight-hour workday. If needed the claimant can rest, stretch every

two hours for 10-15 minutes falling within the normal breaks and lunch period.[3] She can never climb ladders ropes, or scaffolds. She must avoid workplace hazards such as operating fast or dangerous machinery, driving commercial vehicles, and working at unprotected heights.[4] She can occasionally kneel, stoop, and crawl. She can perform simple, repetitive, and routine tasks with occasional contact with the public and occasional tasks that require teamwork. She can work in a static work environment, an environment that remains the same from day to day regarding the tasks to be performed and the physical surroundings. She cannot perform assembly line-type work. She should work with objects more than people.

AR 26–36

At step four the ALJ concluded that Plaintiff could not perform past relevant work as a nurse assistant. AR 36. At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: inspector, hand packager, and sub-assembler. AR 37. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time from the October 1, 2015 alleged onset date through the March 31, 2021 date last insured. AR 38.

## V.    Issue Presented

Plaintiff asserts two claims of error: 1) "The ALJ erred by finding the opinion from examining physician Dr. Portnoff 'less persuasive' without proper consideration of the supportability and consistency of the opinion with the record"; and 2) "The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for discounting her subjective complaints." MSJ at 1, Doc. 13.

### A.    The legal standards relating to Dr. Portnoff's Opinion

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971,

---

[3] Which need not have been specified as it is not a reduction on the range of light work. Any employee could do whatever they wish during normal breaks and lunch periods.

[4] Which are token restrictions invariably included in every RFC formulation and which rarely have an impact on the available occupational base.

at *2 (C.D. Cal. Mar. 2, 2018).   The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).   "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).   "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."   20 C.F.R. § 404.1520c(a).   Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.   20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

**B.**    __Analysis__

On December 9, 2019, Dr. Portnoff conducted a consultative psychological evaluation at the request of the agency.  AR 843–46.  Dr. Portnoff wrote a corresponding narrative opinion (AR 847) and a corresponding check-box opinion (Medical Source Statement Of Ability To Do Work Related Activities, AR 850).  Therein, Dr. Portnoff identified various limitations across the spectrum (no limitations in some areas, mild, moderate, and marked in other areas of mental functioning), discussed in more detail below.

Plaintiff disputes the three reasons the ALJ provided for discounting Dr. Portnoff's opinion, including: 1) inconsistency between Dr. Portnoff's narrative opinion and check-box questionnaire; 2) inconsistency with Plaintiff's sister's third party report; and 3) lack of support in Dr. Portnoff's objective findings.

The ALJ explained as follows:

> Dr. Portnoff's opinion was less persuasive because it was internally inconsistent. In the narrative report, Dr. Portnoff opined the claimant had no limitation in accepting instructions from supervision; whereas in the checkbox opinion, he opined that the claimant was moderately limited in interacting with supervisors. He opined that the claimant was moderately-to-markedly limited in dealing with stress and then stated the claimant was markedly limited in dealing with stress in the checkbox form. Neither of these statements were consistent with the claimant's sister who reported that the claimant handled changes in routine fine and she sometimes became worried about things she could not handle.

AR 35.

**1.**    __Internal Inconsistency__

Plaintiff contends there is no inconsistency between Dr. Portnoff's opinion that Plaintiff had no limitation in *accepting instructions* from supervisors (as stated in the narrative opinion), with his opinion that Plaintiff did have a moderate limitation in *interacting* with supervisors (as identified in Dr. Portnoff's check box questionnaire).  Here, the ALJ appears to have conflated the two.  The former relates to understanding/remembering/carrying out instructions, whereas the latter

6

relates to social interaction.[5]

Nevertheless, the RFC does account for limitations in social interaction in that it specifies the claimant would have occasional public contact, occasional teamwork and work more with objects than people.  AR 26.  Granted, these do not explicitly accommodate a moderate limitation in interaction *with supervisors*.  But Plaintiff identifies no authority (caselaw, rule, regulation, POMS DI, or otherwise), nor offers any theory as to how a moderate restriction in interaction with supervisors would be more appropriately incorporated into the RFC, particularly considering the check-box form itself defines a "moderate" limitation as "more than a slight limitation in this area but the individual can still function satisfactorily."  AR 848.

Plaintiff also disputes the ALJ's finding that Dr. Portnoff was inconsistent as to Plaintiff's limitations in handling workplace stress, opining on the one hand that it was "moderate to marked" (in the narrative opinion), but on the other hand that it was "marked" (in the check-box opinion). Plaintiff appropriately contends the ALJ's characterization is imprecise in that the two opinions did not both address workplace stress.  The narrative opinion addressed the ability to "deal with the stress encountered in a competitive work environment" (AR 847), whereas the check-box form addressed the ability to "respond appropriately to usual workplace situations and to changes in a routine work setting" (AR 849).

However, the RFC reasonably captures these limitations as discussed below.  To the extent it does not, the ALJ's decision was well supported in declining to incorporate moderate to marked limitations in respect to being inconsistent with Plaintiff's sister's third party report, and being unsupported by the objective mental status examinations.

---

[5] Dr. Portnoff's narrative opinion as to no limitation in accepting instructions from supervisors has its own analogue in the check box questionnaire, namely the section regarding understanding/remembering/carrying out instructions, in which Dr. Portnoff checked "none" (AR 848) consistent with his narrative opinion that she had no such limitation (AR 847).  In the next section of the questionnaire, Dr. Portnoff checked the box corresponding to "moderate" for interaction with peers, supervisors, and the public (AR 849) consistent with his narrative opinion that she was moderately limited in that area (AR 847).  Thus, there is no inconsistency between the opinions.

## 2.      Third Party Report

Plaintiff's sister provided a different opinion about Plaintiff's ability to handle stress ("sometimes she gets worried about things she can't handle") and her ability to handle changes in routine ("fine"), statements which are not supportive of moderate to marked limitations in either area. AR 382. Plaintiff questions the ALJ's reliance on her sister's third party report, explaining as follows:

> Further, in the September 1, 2020, decision, the ALJ found the sister's statements persuasive, stating the "statements were not supported by the medical record and objective findings and were inconsistent with the medical opinion evidence of record. There statements were not persuasive." (emphasis added) Ar. 171. Now, without offering any explanation, the ALJ finds the sister's statement persuasive enough to rebut Dr. Portnoff's medical opinion.

> *Id.*

Defendant responds that in the vacated September 1, 2020, decision, the ALJ rejected Plaintiff's sister's third party report as to Plaintiff's *physical* limitations, but is now (in the current operative decision) accepting the third party report as to Plaintiff's *mental* limitations, which are not inconsistent findings. Resp. at 8 (citing AR 171, 33–34). Both parties' arguments are reasonable. Moreover, although one could reasonably disagree as to the supportability of the ALJ's reliance on Plaintiff's sister's third party function report over that of a medical expert, at minimum the record does support two conclusions as to how limited Plaintiff is in terms of stress management and changes in routine. Those subjects are not exceedingly technical or outside a layperson's ability to address.

## 3.      Objective Findings

The ALJ's decision to only partially credit Dr. Portnoff's opinion was independently supported by the mental status examination findings. Indeed, upon examination Dr. Portnoff documented: adequate grooming; no psychomotor abnormalities or involuntary movements; good eye contact; <u>mildly reduced facial kinetics</u>; prompt and spontaneous speech but <u>mildly flattened</u>;

grossly intact receptive language comprehension; coherent and organized thought process; denial of hallucinations; denial of active suicidal ideation; affect characterized by <u>mildly tense depression</u>. AR 845.

As to Intellectual/Sensorium, Dr. Portnoff documented: oriented x 3; immediate recall intact; delayed recall of 3 out of 3 items; able to remember autobiographical information; knew how many eggs were in a dozen, the capital of California, the location of the statue of liberty, but could not name California's Governor; could not subtract 65 cents from a dollar; could count backwards from 20 without error; had intact abstract thinking; could identify basis similarities and differences; had adequate social judgment; had adequate insight into psychiatric symptoms and need for treatment.  AR 846.

Thus, Dr. Portnoff's mental status examination findings were normal with the exception of mildly reduced facial kinetics, mildly flattened speech, and mildly tense/depressive affect.  But none of these mild findings strongly support the moderate to marked limitations Dr. Portnoff identified in dealing with the stress encountered in a competitive work environment or responding appropriately to usual workplace situations and changes in a routine work setting.  This is similarly true with respect to the lone defect (1 out of 4 tested) noted in fund of knowledge (inability to name the Governor), and the error in simple mathematical calculation (subtracting 65 cents from a dollar).  Plaintiff emphasizes in her reply brief that the ALJ overlooked these deficiencies.  Reply at 2, Doc. 15.  But they do not logically relate to the functional capacities at issue, namely her limitations in responding appropriately to usual work situations, changes in environment, and stress management (as opined by Dr. Portnoff), or her social anxiety, situational triggers, trust issues, and history of abuse as she testified to.  Deficiencies in fund of knowledge and simple arithmetic are not of the same category as stress management, adaptation to work environments, or social capacity.

Plaintiff next emphasizes records documenting that she was homeless at times, had a

strained relationship with her family, and was subjected to victim blaming and physical abuse by her sister and her dad--which on at least one occasion resulted in an emergency department visit. MSJ at 21 (citing AR 497, 621, 977). Plaintiff suggests these records support Dr. Portnoff's opinion concerning Plaintiff's limited ability to respond appropriately in competitive work situations. *Id.* However, the inference is not altogether supportable. Certainly, with an understanding and appreciation of the unfortunate and sensitive nature of Plaintiff's familial difficulties and past trauma, a typical competitive work environment does not subject employees to similar stressors. Thus, her understandably limited ability to thrive in her home environment does not necessarily equate to an inability to thrive in a work environment, particularly a static work environment free from changes to her job duties or physical surroundings with no more than occasional social interaction.

Plaintiff also disputes the ALJ's "isolated discussion of normal findings [which] is not substantial evidence when it is not representative of the overall record." MSJ at 22. However, as to which findings are more representative of the overall record, Plaintiff identifies little by way of example. With the exception of Plaintiff's inability to subtract 65 cents from a dollar and inability to name the governor, the ALJ did not overlook the pertinent evidence Plaintiff emphasizes when summarizing normal and abnormal findings alike, a representative sample of which included the following: **a)** diagnoses (MDD recurrent severe without psychotic features, GAD, PTSD, insomnia, alcohol abuse disorder, cannabis abuse disorder, cocaine abuse disorder); **b)** prescriptions (Zoloft, hydroxyzine, Benadryl, nortriptyline, Xanax, lorazepam, Lamictal, Ambien, Seroquel, Buspar, Prazosin, Cymbalta, Citalopram, celexa, doxepin, atarax, banophen); **c)** psychiatric hospitalization (an involuntary hold for suicidal ideation and was discharged the following day in stable condition); **d)** symptoms (muscle tension, teeth grinding, nausea, shortness of breath, headaches, excessive worry, poor motivation, poor energy, fatigue, poor sleep, sadness/tearfulness, fluctuating appetite,

paranoia, intrusive memories, social anxiety, hypervigilance, nightmares, un-cued panic attacks several times each week, apathy, over-reactive verbal and physical anger; fatigue; significant distress; irritability; and impaired concentration with impaired social and occupational functioning due to re-experiencing, avoidance, and hypervigilance of situations associated with her trauma); **e)** <u>examination findings</u> (disheveled appearance; alert, oriented, and cooperative;  fair eye contact; normal speech; linear and organized thought process without flight of ideas or loose associations; depressed and worried mood; dysthymic affect; normal thought content without suicidal or homicidal ideation, perceptual disturbances, obsessions, compulsions or delusions; good insight and judgment; intact memory and impulse control; depressed and anxious mood/affect; poor grooming and hygiene; intact memory; average IQ; adequate fund of knowledge and intact attention span; interpersonal and relationship difficulties with a history of recent and past abuse; need for a safety plan; and GAD7 anxiety screening score in the severe range).  AR 30–33.

These diagnoses, symptom reports, prescriptions, and objective findings certainly support severe mental impairments and associated limitations.  The ALJ did not conclude otherwise.  The ALJ acknowledged the same and formulated an RFC which reflects mental functional limitations, including limitations similar to those identified by Dr. Portnoff (social interaction, stress tolerance, and responding to usual work situations and changes in a work setting).  The RFC specified "simple, repetitive, and routine tasks[6] with occasional contact with the public and occasional tasks that require teamwork. She can work in a static work environment, an environment that remains the

---

[6] *See, Henry v. Colvin*, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) ("claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in a residual functional capacity of simple, repetitive tasks."); *Keller v. Colvin*, 2014 WL 130493 at *3 (E.D. Cal. Jan. 13, 2014) (finding the ALJ "appropriately captured" a physician's opinion that the plaintiff required "low stress settings" by limiting the plaintiff to simple tasks, "equating to unskilled work"); *Acuna v. Colvin*, 2015 at *2 (C.D. Cal. Nov. 24, 2015) (finding the plaintiff did not "show a moderate limitation in his ability to respond appropriately to changes in the work setting would preclude him from performing simple, routine tasks..."); *Longston v. Calvin*, 2015 WL 7761065 at *3 (D. Or. Dec. 1, 2015) (finding "moderate mental limitation in responding appropriately to changes in the work setting" were encompassed in a limitation to unskilled, simple tasks).

same from day to day regarding the tasks to be performed and the physical surroundings. She cannot perform assembly line-type work. She should work with objects more than people."  AR 26

To the extent the evidence supports a more restrictive RFC, Plaintiff does not explain what specific evidence that is, or what those restrictions might look like.  As the party challenging the agency's determination, Plaintiff has the primary obligation of providing such a discussion, and the effort here fell short.  *See Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005)* ("The claimant carries the initial burden of proving a disability.");  *See Greenwood v. Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted); *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Finally, Plaintiff observes that the ALJ previously found Dr. Portnoff's opinion persuasive in the first decision dated September 1, 2020 (AR 172), but not in the current operative decision dated September 29, 2021 (AR 35).  Plaintiff contends that: 1) "the ALJ failed to offer any explanation as to what in the record changed her opinion between the date of the two decisions," and that,  2) "If anything, additional medical records submitted after the first decision offer even more support and consistency for Dr. Portnoff's opinion. See Ar. 945, 965, 977."  MSJ at 22.

In regard to the first decision, the Appeal's Council instructed the ALJ to: 1) clarify the inconsistent references to medium versus light exertional level (which the ALJ did) and 2) to provide additional explanation of the weight given Dr. Portnoff's opinion and its consistency with the RFC, particularly in its incorporation of the "marked level limitation in her ability to respond appropriately to usual work situations and changes in the work environment, and a moderate to marked limitation in her ability to deal with stress encountered in a competitive work environment

(Exhibit 16F)." AR 183–84. The ALJ subsequently explained that the opinion was only partially persuasive, and in so concluding the ALJ explained that "while in a static work environment and performing simple, routine and repetitive tasks, the claimant would not have marked limits dealing with stress from day to day." AR 35.

Again, in a not well constructed attempt to amplify the decision by identifying an internal inconsistency in Dr. Portnoff's opinion, the ALJ conflated the two limitations. The finding concerning internal insistency adds little to the decision and can be ignored altogether as the objective record at a minimum supports different views as to whether Plaintiff had moderate to marked mental limitations in general. Further, the RFC reasonably incorporates both limitations as described in more detail above. The Appeals Council did not conclude otherwise, nor find the ALJ's subsequent explanation inadequate, and finally did not suggest the ALJ needed to provide a reason for the change as to the persuasiveness of Dr. Portnoff's opinion.

Further, there is no merit to Plaintiff's argument that "additional medical records submitted after the first decision offer even more support and consistency for Dr. Portnoff's opinion. *See* Ar. 945, 965, 977." MSJ at 22. Plaintiff provided the following description of these records in her factual summary:

> On July 9, 2021, Plaintiff presented to the Emergency Department for anxiety and depression after an altercation with her sister. Ar. 945. She reported she was at her sister's house when she got into a verbal altercation with her aunt, her sister, and her stepdad. Ar. 944. She reported they were a trigger for her. Ar. 944. Plaintiff made a plan for her and her children to stay at her cousin's house. Ar. 946.[7]
> On August 3, 2021, Plaintiff presented to United Health Center to establish care. Ar. 973. Plaintiff reported feeling stressed "rather much." Ar. 976. She stated her sister and her dad "put hands on her" and reported a history of abuse since the age of 8. Ar. 977. Plaintiff reported staying with her cousin. Ar. 977. She was prescribed Hydroxyzine and Duloxetine and was referred to behavioral health for anxiety and depression. It was noted she scored a 14 on the PHQ9 screening and 21 on the GAD7 screening. Ar. 978.
> On August 24, 2021, Plaintiff returned to United Health Center for a follow-up for mixed anxiety and depressive disorder. Ar. 965. Plaintiff reported feeling

---

[7] The emergency department visit notes reflect she was discharged same day in stable condition. AR 945-46.

stressed "rather much." Ar. 964. Plaintiff also reported things have been difficult and she avoids anything that needs attending right away until she can address it. Ar. 965. She reported having a hard time adjusting to her new dosage of medication and having side effects. Ar. 965. Plaintiff endorsed feeling more anxiety, restless, and fidgety. Ar. 965, 969. Plaintiff's Duloxetine was increased. Ar. 970.

Here, Plaintiff fails to articulate how these records suggest Plaintiff is unable to perform simple and repetitive tasks with minimal social interaction in a static work environment free from changes to her job duties or physical surroundings. Plaintiff identifies no harmful error with respect to the ALJ's handling of Dr. Portnoff's opinions.

### C.   Plaintiff's Testimony

#### 1.   Applicable Law

The ALJ is responsible for determining credibility,[8] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

---

[8] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

## 2.    <u>Analysis</u>

After summarizing the ALJ's testimony, the ALJ explained as follows:

> To start, I considered the claimant's allegations regarding her activities of daily living. Although she described daily activities that were fairly limited, two factors weighed against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities could not be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities were truly as limited as alleged, it was difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities were considered outweighed by the other factors discussed in this decision.

AR 27.

Plaintiff's second claim of error is largely based on her critique of this paragraph, arguing variously that the ALJ failed to identify any activities that contradict Plaintiff's alleged limitations, or reflect a degree of activity consistent with full-time work, and that under prevailing caselaw claimants should not be punished for attempting to lead normal lives and need not "vegetate in a dark room" to be found disabled. MSJ at 23-24) (quoting *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).

Plaintiff's critique somewhat misses the mark. The fact that the ALJ mentioned "activities of daily living" does not always warrant quoting the Ninth Circuit's dicta from *Cooper* about vegetation in a dark room, or the associated multi-paragraph exposition about the Ninth Circuit's repeated admonitions for ALJs to be cautious in drawing inferences from ADLs.

Here, the ALJ did not find that Plaintiff's activities undermined her testimony or suggested an ability to work. To the contrary, the ALJ acknowledged that Plaintiff testified that her activities were fairly limited (full stop). The ALJ nevertheless found such testimony did not weigh strongly in favor of a disability finding for two reasons: 1) the extent of her activities could not be objectively verified with any degree of certainty (which would always be the case, and thus not a clear or convincing reason); and 2) it was difficult to attribute her alleged limitations to her medical conditions "in view of the relatively weak medical evidence and other factors discussed in this decision." AR 27. The pertinent objective evidence aligns with the ALJ's description as explained below.

The remainder of Plaintiff's argument is predicated on the notion that the ALJ's summary of medical evidence is insufficient as it is not tethered to the testimony it purportedly undermines. As further explained below, the pertinent medical evidence and its connection to the testimony is reasonably evident, while Plaintiff's argument falls victim to the same criticism. Plaintiff similarly provides a summary of both the medical evidence and her testimony followed by a conclusory argument that the former supports the latter. However, Plaintiff does not identify testimony the medical evidence purportedly supports, nor explains how the evidence supports it. Importantly, Plaintiff does not explain what changes to the RFC would be warranted if the testimony were credited as true.

Nevertheless, Plaintiff's summary of testimony will be considered to the extent it speaks to greater limitations than those incorporated in the RFC. In the same vein, the ALJ's factual discussion will be considered to the extent it addresses evidence that speaks to the functional capacities in question even in the absence of an attempt by the ALJ to overtly make that connection.

Earlier in her factual summary Plaintiff described the following testimony:

At the hearing, Plaintiff testified to the following: She is 45 years old and has a 12th grade education. Ar. 89. Plaintiff is 5'4" and weighs 182 pounds. Ar. 89.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff receives mental health treatment about once a week. Ar. 90. Plaintiff has been on different medications, and they have stopped working. Ar. 90. She has four children. Ar. 101. Plaintiff is antisocial. Ar. 92. She has had so much traumatic things happen in her life that little, unexpected things will trigger fear and anxiety. Sometimes Plaintiff cannot function because of the anxiety. It affects every day of her life, including decision making. Ar. 92. Plaintiff often needs help from her older daughter to deal with her illnesses and symptoms. Ar. 92. Plaintiff previously worked in a hospital setting where she initially needed an accommodation to not lift more than 20 pounds. Ar. 94-95. She was then put on light duty, then sedentary duty, and then eventually was sent home because she was unable to sit longer than an hour or two and they therefore didn't have any other work for her to do. Ar. 94, 97. Plaintiff filed a claim for Workers Compensation in 2015. Ar. 96. She prevailed in her case and was given a settlement for future medical bills. Ar. 96.

Plaintiff does not drive due to anxiety episodes and attacks. Ar. 102. Plaintiff also sometimes has difficulty caring for her children. Ar. 102. Sometimes she can cook for them but sometimes she can't do things for them. Ar. 103. Her older daughter and niece come over to help her if she needs it. Ar. 102. Plaintiff can do stuff to some point but after a while her body starts to hurt. Ar. 102. Just getting up in the morning is very hard for her. Ar. 103. Plaintiff's history of rape and abuse make it hard for her to trust people. Ar. 103. It is very hard for her to trust anybody with herself or her children. Ar. 103, 114. If Plaintiff is in a situation where she feels like she is going to be attacked or something is going to happen, she loses control and feels like she turns into a child. Ar. 103. Child Protective Services are involved with Plaintiff's children because of her mental status and being in and out of the hospital for her mental impairments. Ar. 107. CPS claims that Plaintiff is unstable to take care of her children because of her mental illnesses. Ar. 106. Plaintiff has used drugs in the past but is clean now and gets random drug tests. Ar. 106-07.

Plaintiff also suffers from back pain. Ar. 108. She cannot carry anything between 10 and 15 pounds. Ar. 108. She cannot sit longer than an hour or two. Ar. 108. It takes Plaintiff longer than before when cooking or doing housework. Ar. 108, 114. Plaintiff has to rest every hour for at least 10 minutes due to the sciatica and injuries on her legs. Ar. 108. Once the pain starts, Plaintiff starts to get anxiety which can lead into an anxiety attack. Ar. 108. In case of an emergency, Plaintiff must carry a 12-hour anxiety pill with her that will act in 15 minutes. Ar. 109. Plaintiff uses a back brace and a TENs machine. Ar. 109. Plaintiff also takes hot showers and uses hot and cold packs. Ar. 109.

Plaintiff experiences a lot of side effects from her medications. Ar. 110. She can't drive because a lot of them make her sleepy and she experiences cotton mouth to the point where she has to constantly drink water. Ar. 110. Another medication makes her have to pee every 10 to 15 minutes and sometimes she doesn't make it to the bathroom. Ar. 110. She feels like she doesn't have control of her body with her medications. Ar. 110. Plaintiff also does not sleep well. Ar. 110. On average, she sleeps 3-4 hours. Ar. 111. Plaintiff is then tried during the day and feels weak. Ar. 111. Plaintiff also suffers from amenia and had to have a blood transfusion. Ar. 112.

Plaintiff's testimony summary addresses several items that have little apparent import to her claims.  As to iron deficiency anemia, the ALJ found it to be a non-severe impairment and

assessed no associated limitations.  Plaintiff does not overtly contend that this condition caused any limitations, nor does she identify supporting evidence suggestive of limitations.  The ALJ did not discuss urinary urgency or incontinence as a side effect of medications, and Plaintiff similarly does not overtly put that in issue other than the passing reference to the related testimony.

The testimony Plaintiff summarized concerning her anxiety, difficulty with daily functioning and decision making, social isolation, situational triggers, past trauma, and CPS involvement with her children, although very unfortunate, is too generalized.  It breaks no new ground as to her mental functional capacity and has largely been discussed above in response to her claim concerning Dr. Portnoff's opinion (which addressed specific functional capacities).

The testimony also does not strongly suggest the existence of limitations greater than reflected in the RFC.  The ALJ's obligation to provide clear and convincing reasons before rejecting "subjective complaints" does not exist in a vacuum .  It is of little import if counsel[9] does not at a minimum draw out those subjective complaints concretely at the administrative hearing, ideally explaining their significance in Plaintiff's opening brief.

Plaintiff's inability to sit longer than an hour or two due to lower back pain and sciatica is not inconsistent with normal breaks and lunch as noted in the RFC, provided of course that the maximum duration is in fact two hours, not one.  There is no need to credit the most restrictive reading of her testimony (one hour) where she gave a range of potential sitting durations, the maximum of which would be accommodated by normal breaks and lunch (2 hours).

Her alleged need for a break every hour was in response to a question about her standing and walking limitations, and did not have general applicability beyond that.  AR 108.  Inability to stand and walk more than one consecutive hour would indeed be inconsistent with the RFC for light work which stated no standing or walking limitations, as likewise would be her alleged

_____

[9] Granted, it was not the same counsel currently representing the claimant.

inability to lift 10 to 15 pounds.  In short, her testimony if accepted would establish she cannot meet the exertional requirements of light work as to standing, walking, lifting or carrying. Both limitations were identified in response to questions about her back pain and sciatica.  AR 108.  To the extent she alleges that other physical impairments were contributory, it was her burden to explain as much.

As to her lumbar spine, the ALJ discussed the following evidence: July 23, 2014 MRI showing moderate left L4-5 lateral recess stenosis compressing the L5 nerve root that could cause radiculopathy; May 1 2017 Toradol injection for low back pain; September 21, 2017 exam showing reduced tenderness, reduced ROM, rigidity, guarding of paraspinals and facet joints, trigger points with taught bands and jump signs, positive nerve root tension signs and decrease sensation along the left L3-S1 dermatomes, with treatment consisting of medication, home therapy, massage, warm/cold packs and Toradol injection; November 2, 2017 examination showing no spinous process or paraspinal muscle tenderness, negative straight leg raise, normal motor strength, and she was started on muscle relaxants; October 23, 2018 x-ray showing mild loss of disc space with degenerative spondylosis; March 29, 2019 lumbar MRI showing left paracentral disc protrusion with extrude disc fragment encroaching the left L5 nerve root with focal spinal canal stenosis; December 5, 2019 cervical MRI showing mild degenerative disc disease and mild stenosis of the central canal and neural foramen at C3-C6.  AR 28-29.

The ALJ also described the results of the November 19, 2019, consultative physical examination with Dr. Fabella which noted: normal gait; poor balance with heel and toe walking; no spinal or paraspinal tenderness; mildly decreased ROM in forward flexion at 85 degrees but otherwise normal ROM; straight leg raise caused localized low back pain; 5/5 muscle strength throughout; normal neurological findings including sensation and reflexes.  AR 30 (citing AR 715-717).  Dr. Fabella opined Plaintiff could lift/carry 25 pounds frequently and 50 occasionally;

sit/stand/walk without limitation; and, perform occasional postural activities.  AR 718.

The ALJ found the opinion "somewhat supported by the medical record," found the examination findings "consistent with the ability to perform work at the medium level of exertion," but nevertheless found "a reduction in the residual functional capacity to the light exertional level was warranted considering the claimant's complaints of pain, other objective findings in the record and the impact of the claimant's obesity on her function."  AR 34.

The medical evidence discussed by the ALJ did show positive findings regarding Plaintiff's lumbar spine with imaging pathology noted as mild to moderate, examination findings showing tenderness and ROM deficiencies at times (but no tenderness or ROM deficiencies at other times). Motor strength was noted as normal upon examination by her clinician on November 2, 2017, and by Dr. Fabella at the consultative examination.  Gait was normal but for balance issues with heel and toe walking.

One need not reweigh the evidence or make any inferential leaps to determine that the objective record supports more than one conclusion as to whether her back pain precluded her from lifting 10 to 15 pounds and standing or walking more than 1 hour, even if the ALJ did not specifically engage in the matching exercise that some Ninth Circuit dicta suggests is required[10]. Even had the ALJ been inclined to engage in that matching exercise, the majority of Plaintiff's other testimony (her summary of which is quoted above) was simply not developed enough, or drawn out enough, at the hearing with sufficient clarity or concreteness to be susceptible to refutation or confirmation in the medical evidence, or to be incorporated into the RFC. For example, instances such as being antisocial, having traumatic things happen in her life, sometimes can't function, can't make decisions, and requires help from family members.  AR 92).  The RFC is not

---

[10] *See, e.g. Godinez v. Berryhill*, No. SACV 17-0194 SS, 2017 WL 6349720, at *4 (C.D. Cal. Dec. 11, 2017) (citing Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (noting "it is problematic that the ALJ failed to indicate which of Plaintiff's allegations are not supported by objective findings.").

a representation of the most one can do while remaining symptom free, rather it is a representation of "the most you can do despite your limitations."  20 C.F.R. 416.945(a)(1).

Plaintiff further emphasizes that the objective findings alone are not a sufficient basis to reject her alleged pain severity.  Indeed, the objective findings need not necessarily corroborate the *severity* of Plaintiff's alleged pain provided the objective evidence corroborates at least *some* level of pain, then Plaintiff's testimony cannot be rejected without clear and convincing reasons.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996) (explaining the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.").

The evidence certainly corroborated some level of radicular low back pain given the left sided multi-level neural impingement caused variously by mild to moderate disc degeneration, disc bulges, and lateral recess stenosis, among others, though not necessarily corroborative of the full extent of Plaintiff alleged exertional intolerance given mixed findings as to tenderness and nerve root tension signs, normal strength, normal range, and normal gait.

But the objective evidence was not the only supportive factor the ALJ identified.  Dr. Fabella's consultative examining opinion as to medium exertional capacity with 25 to 50 pounds of lifting/carrying and unlimited stand/walk was independently supportive of the ALJ's assessed RCF.[11]  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (CE's "opinion alone constitutes substantial evidence, because it rests on his own independent examination . . ."); *Castaneda v. Astrue*, 344 F. App'x 396, 398 (9th Cir. 2009) (unpublished) ("Even assuming Dr.

---

[11] Which is equally applicable to the ALJ's implicit rejection of Plaintiff's testimony to the contrary.  Plaintiff would limit the analysis only to the words following "I reject testimony X because . . ."  Despite some dicta suggesting otherwise, the scope of judicial review is not necessarily so narrow.  *See, e.g.*, *Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th Cir. 2019) (ALJ decisions to be a "model of clarity" if the ALJ's logical "path can be reasonably discerned"); *but see Godinez v. Berryhill*, No. SACV 17-0194 SS, 2017 WL 6349720, at *4 (C.D. Cal. Dec. 11, 2017) (explaining that it is problematic that the ALJ failed to indicate which of Plaintiff's allegations are not supported by objective findings.  (citing *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).

Cunningham did not review Castaneda's October 2003 MRI, the ALJ did not err in considering Dr. Cunningham's report. Dr. Cunningham's assessment rested on his own independent examination of Castaneda and was consistent with the record as a whole.")

As quoted above, the ALJ found Plaintiff's testimony as a whole unsupported by the relatively weak medical evidence, described that evidence in detail, found it supported Dr. Fabella's opinion in part, but that her reported pain levels and medical evidence supported a reduction from medium to light exertional work.   The ALJ did not fully embrace Plaintiff's testimony as to a less than light exertional capacity in the respect of lifting/carrying and standing/walking.   Thus, the ALJ's finding was supported by substantial evidence and by clear and convincing reasons, namely by the mixed objective medical evidence and the consultative examining opinion of Dr. Fabella.

## VI. <u>Recommendations</u>

For the reasons stated above, the recommendation is that the Court find that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled, that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied, and that the Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Monica Martinez Leal.

## VII. <u>Objections Due Within 14 Days</u>

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 27, 2024**                        **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE