UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA MARTINEZ LEAL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY<br>Commissioner of Social Security[1],<br><br>　　　　Defendant. | Case No.: 1:22-cv-0759 JLT GSA<br><br>ORDER DECLINING TO ADOPT THE FINDINGS AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND, AND REMANDING THE ACTION FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MONICA MARTINEZ LEAL AND AGAINST DEFENDANT MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY<br><br>(Docs. 13, 14 and 16) |

Monica Martinez Leal seeks review of the final decision denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. (Docs. 1, 13.) Plaintiff asserts the administrative law judge erred in evaluating the medical evidence and Plaintiff's subjective statements concerning her impairments. (Doc. 13.) The Commissioner asserts the ALJ's decision is supported by substantial evidence. (Doc. 14.) For the reasons set forth below, the matter is remanded for further administrative proceedings.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Martin O'Malley as the defendant in this suit.

1

I.      **Findings and Recommendations of the Magistrate Judge**

Plaintiff asserts the ALJ erred in addressing the supportability and consistency of the medical opinion of Dr. Portnoff, who performed a consultative examination, and finding the opinion "less persuasive." (Doc. 13 at 18.) Plaintiff disputes the reasons the ALJ provided for discounting the opinion, including: (1) inconsistency between Dr. Portnoff's narrative opinion and the check-box questionnaire he completed; (2) inconsistency with a third-party report from Plaintiff's sister; and (3) a lack of support in Dr. Portnoff's objective findings. (*See id.* at 18-22; *see also* Doc. 16 at 6.)

The magistrate judge found "the ALJ appears to have conflated" Plaintiff's ability to accept instructions from supervisors and interact with supervisors when addressing internal inconsistencies in the opinion of Dr. Portnoff. (Doc. 16 at 6-7.) However, the magistrate judge indicated that "[t]he finding concerning internal insistency adds little to the decision and can be ignored altogether as the objective record at a minimum supports different views as to whether Plaintiff had moderate to marked mental limitations in general." (*Id.* at 13.) In addition, the magistrate judge opined:

> [T]he RFC does account for limitations in social interaction in that it specifies the claimant would have occasional public contact, occasional teamwork and work more with objects than people. AR 26. Granted, these do not explicitly accommodate a moderate limitation in interaction *with supervisors.* But Plaintiff identifies no authority (caselaw, rule, regulation, POMS DI, or otherwise), nor offers any theory as to how a moderate restriction in interactions with supervisors would be more appropriately incorporated into the RFC…."

(*Id.* at 7, emphasis in original.) Reviewing the third-party report, the magistrate judge opined: the record "supports two conclusions as to how limited Plaintiff is in terms of stress management and changes in routine"—tactically acknowledging that in a prior decision, the ALJ found the statements in the third party report were "not persuasive." (*Id.* at 8.) Finally, the magistrate judge determined that "[t]he ALJ's decision to only partially credit Dr. Portnoff's opinion was independently supported by the mental status examination findings." (*Id.* at 10.) The magistrate judge concluded that "Plaintiff identifies no harmful error with respect to the ALJ's handling of Dr. Portnoff's opinions." (*Id.* at 14.)

Plaintiff also asserted the ALJ erred in evaluating her subjective complaints. (Doc. 13 at 22.) The magistrate judge noted that "the ALJ acknowledged that Plaintiff testified that her activities were fairly limited (full stop)." (Doc. 16 at 16.) The magistrate judge observed that to the extent the ALJ

rejected the testimony concerning her daily activities because it "could not be objectively verified," this was "not a clear and convincing reason." (*Id.*) Nevertheless, the magistrate judge found "[t]he pertinent objective evidence" supported the ALJ's decision. (*Id.*; *see also id.* at 16-21.) The magistrate judge noted Plaintiff argued the "objective findings alone are not a sufficient basis to reject her alleged pain testimony." (*Id.* at 21.) The magistrate judge rejected the argument, stating: "But the objective evidence was not the only supportive factor the ALJ identified. Dr. Fabella's consultative examining opinion as to medium exertional capacity with 25 to 50 pounds of lifting/carrying and unlimited stand/walk was independently supportive of the ALJ's assessed RFC." (*Id.*, citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).) The magistrate judge concluded the finding regarding Plaintiff's testimony "was supported by substantial evidence and by clear and convincing reasons, namely by the mixed objective medical evidence and the consultative examining opinion of Dr. Fabella." (*Id.* at 2.) The magistrate judge recommended "the Court find that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled" and deny Plaintiff's appeal from the administrative decision. (Doc. 16 at 22.)

## II. Objections

Plaintiff filed objections to the Findings and Recommendations, asserting "[t]he Magistrate Judge's finding that the ALJ properly evaluated Dr. Portnoff's opinion should be rejected." (Doc. 20 at 1, emphasis omitted.) In addition, Plaintiff asserts the "finding that the ALJ properly evaluated Plaintiff's subjective complaints should not be adopted." (*Id.* at 5, emphasis omitted.)

Plaintiff contends, "The Magistrate Judge conceded that the ALJ set forth an improper rationale for discounting Dr. Portnoff's opinion of Plaintiff's moderate limitations interacting with supervisors, but asserts this is a harmless error." (Doc. 20 at 2.) She argues the "assertion of 'harmless error' is wholly unsupported and should not be adopted." (*Id.*) According to Plaintiff, "It is a plain fact that a limited ability to interact with supervisors is a separate and distinct social limitation that is not accounted for by limiting interaction with the public and coworkers." (*Id.*, citing *Mendoza v. Kijakazi*, 2022 WL 715096, at *6 (E.D. Cal. Mar. 10, 2022).) Plaintiff notes this Court previously held: "the ALJ's inclusion of limited contact with the public does not subsume the limitation with supervisors and co-workers." (*Id.*, quoting *Mendoza*, 2022 WL 715096, at *6.) In addition, Plaintiff argues the

magistrate judge "erroneously analyzes the objective findings where the ALJ did not" to find "the ALJ reasonably rejected Dr. Portnoff's opinion regarding Plaintiff's limited ability to tolerate stress and respond appropriately to usual workplace situations and changes." (*Id.* at 3.) Plaintiff contends the "supplementary fact-finding" by the magistrate judge should not be accepted. (*Id.* at 4.)

Plaintiff also maintains the ALJ's decision related to her subjective complaints "is not supported by substantial evidence." (Doc. 20 at 5.) Plaintiff argues, "The Magistrate Judge's recommendation concedes that the ALJ did not discount Plaintiff's symptoms as inconsistent with her daily activities, but fails to note that the ALJ applied an improper standard." (*Id.*) She also argues that "the ALJ's summary of findings fails to state a basis for discounting Plaintiff's alleged pain and symptoms." (*Id.* at 6, citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020).) Finally, Plaintiff contends the finding related to her subjective complaints "rests entirely upon objective examination findings and the ALJ's summary of records, and therefore fails to meet the regulatory requirements." (*Id.*, citing SSR 96-8p; 20 C.F.R. §§ 416.923, 416.945(a)(2).)

**III.    Discussion**

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1). If a party files objections, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.* A de novo review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

   **A.    Evaluation of Dr. Portnoff's medical opinion**

The regulations[2] direct ALJs to determine how persuasive a medical opinion is according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors showing the medical source's "familiarity with … other evidence in the record or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5). An ALJ is only required to discuss supportability and consistency, which are the

---

[2] For applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because Plaintiff filed her application on February 12, 2018 (Doc. 11-1 at 125), Plaintiff's claim is subject to the revised rules.

4

most important factors "when evaluating the persuasiveness of medical opinions." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 404.1520c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the [remaining] factors in paragraphs (c)(3) through (c)(5) of this section…").

The supportability inquiry is an assessment of "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods*, 32 F.4th at 791-792 (internal quotation marks omitted).  The regulations provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

On the other hand, consistency compares an opinion with other evidence to determine its persuasiveness. *See Woods*, 32 F.4th at 792.  With the "consistency" factor, the regulations explain: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Ninth Circuit observed that an ALJ must explain how both the supportability and consistency factors were considered, and "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Dr. Lance Portnoff performed a consultative psychological evaluation, and the ALJ summarized his observations and findings as follows:

> Upon evaluation, the claimant's eye contact was good. Her facial kinetics were mildly reduced. Her speech was prompt and spontaneous, mildly flattened; and her thought process was coherent and organized. She denied suicidal ideation and hallucinations. Her affect, as expressed in speech and demeanor, was characterized by mild tense depression. She was oriented and her memory was intact. She could recall three items immediately and after several minutes. She could count backwards from 20 without error. Her abstract thinking was intact. She could identify basic similarities. Her insight and social judgment were adequate. The claimant reported panic attacks 1-3 times per week and over-reactive anger consistent with PTSD.

5

> She reported chronic depression, psychiatric admits for suicidal ideation, passive suicidal ideas, and vegetative symptoms consistent with depressive disorder. There was insufficient evidence of mania/manic episodes. Dr. Portnoff diagnosed the claimant with PTSD and major depressive disorder. He opined that the claimant had mild and moderate mental work-related limitations (Exhibit 16F, p. 4). He opined one area of marked impairment in the claimant's ability to manage stress.

(Doc. 11-1 at 38.) The ALJ found the opinion of Dr. Portnoff "was somewhat persuasive," stating:

> Dr. Portnoff opined that the claimant was moderately limited in her ability to interact appropriately with coworkers, supervisors, and the public. She was markedly limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting (Exhibit 16F, pp. 6-8). This opinion was only partially supported by the medical record and examination findings. Upon evaluation, the claimant's eye contact was good. Her facial kinetics were mildly reduced. Her speech was prompt and spontaneous, although mildly flattened; and her thought process was coherent and organized. She denied suicidal ideation and hallucinations. Her affect was characterized by mild tense depression. She was oriented and her memory was intact. She could recall three items immediately and after several minutes. She could count backwards from 20 without error. Her abstract thinking was intact. She could identify basic similarities. Her insight and social judgment were adequate. These findings supported moderate limitations in understanding, remembering, and applying information; interacting with others; maintaining concentration, persistence, and pace; and adapting and managing oneself. Dr. Portnoff's opinion was less persuasive because it was internally inconsistent. In the narrative report, Dr. Portnoff opined the claimant had no limitation in accepting instructions from supervision; whereas in the checkbox opinion, he opined that the claimant was moderately limited in interacting with supervisors. He opined that the claimant was moderately-to-markedly limited in dealing with stress and then stated the claimant was markedly limited in dealing with stress in the checkbox form. Neither of these statements were consistent with the claimant's sister who reported that the claimant handled changes in routine fine and she sometimes became worried about things she could not handle (Exhibit 5E, p. 8). In sum, Dr. Portnoff's opinion was partially supported by the medical record, and it was partially consistent with prior administrative medical findings (Exhibits 1A; 3A). It was somewhat persuasive. I found that, while in a static work environment and performing simple, routine and repetitive tasks, the claimant would not have marked limits dealing with stress from day to day.

(*Id.* at 40.) Notably, in the residual functional capacity, the ALJ included limitations Dr. Portnoff identified concerning Plaintiff's ability to interact with coworkers and the public—limiting her to "occasional contact with the public and occasional tasks that require teamwork"—but did not include limitations concerning supervisors. (*See* Doc. 11-1 at 31.)

Plaintiff contends the ALJ failed to properly address the limitations identified by Dr. Portnoff related to interacting with supervisors. (Doc. 13 at 20.) The Court agrees. With the discussion above,

6

the Court is unable to ascertain what, if any, objective evidence the ALJ believed undermined the opinion Plaintiff had moderate limitations with interacting with supervisors. Indeed, it does not appear Plaintiff's thought process, memory, concentration, and math abilities relate to the limitations opinion, although cited by the ALJ in her analysis. To the extent the ALJ purports to identify an internal inconsistency as part of the supportability determination, the ALJ conflates Plaintiff's ability to accept instructions with her ability to generally interact with others around her, including supervisors.

The ALJ also fails to clearly address the consistency with other evidence, other than offering the conclusion that "Dr. Portnoff's opinion was … partially consistent with prior administrative medical findings." (Doc. 11-1 at 40, citing Exh. 1A; 3A.) In so citing, the ALJ cited more than thirty pages of exhibits, including summaries of Plaintiff's medical record and opinions from physicians concerning her level of impairment. (*See id.* at 125-141, 143-159.) The Court declines to speculate as what findings support the ALJ's conclusion the opinion of Dr. Portnoff was only "partially consistent" with those of other physicians, when it is the ALJ's obligation to compare a medical opinion with other evidence in the record and "provid[e] an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Moreover, the opinion of Leticia Martinez, Plaintiff's sister, appears consistent with the imposition of social limitations. Ms. Martinez reported Plaintiff "has anxiety attacks when she is in big groups or church or around lots of people." (Doc. 11-1 at 381.) The ALJ did not acknowledge this statement, which undermines her conclusion that the social limitations identified by Dr. Portnoff are also inconsistent with non-medical evidence in the record.

The Court finds the ALJ failed to properly address the supportability and consistency factors related to the opinion of Dr. Portnoff that Plaintiff has moderate limitations interacting with supervisors. *See Woods,* 32 F.4th at 792. Thus, the ALJ erred in not encompassing such a limitation in the residual functional capacity. *See, e.g., Valentine v. Comm'r Soc.Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009) (an "RFC that fails to take into account a claimant's limitations is defective"); *Norris v. Colvin,* 160 F.Supp.3d 1251, 1264 (E.D. Wash. Feb. 2, 2016) (finding the ALJ erred in failing "to incorporate any limitation as to [the claimant's] ability to appropriately interact with supervisors" in the RFC); *see also Ferguson v. Colvin*, 2016 WL 7042076, at *5 (D.Or. Nov. 28, 2016) ("the omission of a supervisor restriction is not a small error which may be considered harmless given the unique

relationship of a supervisor to an employee") (internal quotation marks, citation omitted).

### B.	Plaintiff's subjective statements

In evaluating a claimant's statements regarding the severity of her symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must set forth clear and convincing reasons for rejecting subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48. The Ninth Circuit explained that a claimant is not required to "produce objective medical evidence of the [symptom] itself," the severity of symptoms, or "evidence of the causal relationship between the medically determinable impairment and the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996). The Ninth Circuit indicated, "By requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon." *Id.* (referring to the test established in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).

The ALJ determined that Plaintiff's medically determinable impairments— which included disorder of the spine, headaches, obesity, insomnia, generalized anxiety disorder, major depressive disorder, and posttraumatic stress disorder (PTSD)—"could reasonably be expected to cause the alleged symptoms." (Doc. 11-1 at 32; *see also id.* at 28.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (*Id.*) In support of the conclusion that Plaintiff's statements were inconsistent with the record, the ALJ stated:

> To start, I considered the claimant's allegations regarding her activities of daily living. Although she described daily activities that were fairly limited, two factors weighed against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities could not be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily

8

> activities were truly as limited as alleged, it was difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities were considered outweighed by the other factors discussed in this decision.
>
> Turning to the objective evidence, I find that the claimant's allegations that she is unable to sustain the physical demands of competitive employment are inconsistent with the medical record because the objective clinical findings do not support the limitations alleged. There are few objective findings in support of the claimant's allegations.

(*Id.*) Following this finding, the ALJ summarized Plaintiff's medical record, generally addressing the records in chronological order. (*Id.* at 32-38.)

### 1.      Activities of daily living

An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's subjective statements. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Daily activities properly "form the basis for an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (factors to consider in evaluating a claimant's statements include "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting"). Here, the ALJ made no such findings.

The ALJ questioned Plaintiff's "limited daily activities"—which were not identified by the ALJ— because the activities "could not be objectively verified with any reasonable degree of certainty." (Doc. 11-1 at 32.) Significantly, this Court and others throughout the Ninth Circuit have criticized ALJs for using identical language, explaining "simply because a fact cannot be verified objectively provides little evidence to support the conclusion that the individual is not being truthful about such fact in any particular instance." *Fisher v. Colvin*, 2015 WL 1442064, at *20 (E.D. Cal. Feb. 20, 2015) (quoting *Garcia v. Astrue*, 2013 WL 1797029 (S.D. Cal. Mar. 13, 2013)); *Morganti v. Colvin*, 2013 WL 1758784, at *8 (N.D. Cal. Apr. 24, 2013) ("The Ninth Circuit has made it clear that objective verification … is not required to find a claimant's testimony credible"); *see also Traub v.*

*Comm'r of Soc. Sec. Admin.*, 2023 WL 3244215, at *4 (D.Az. May 3, 2023) ("the ALJ's reasoning that Plaintiff's daily activities could not be objectively verified is not sufficient to discredit her testimony"); *Scales v. Colvin*, 2017 WL 3021043, at *17 (S.D. Cal. July 14, 2017) (holding "that the Plaintiff's daily activities cannot be objectively verified is not a legally sufficient reason for the ALJ to reject Plaintiff's subjective complaints," and noting the reasoning "has been used in almost identical form by other ALJs and is frequently rejected in this Circuit").)  Consequently, Plaintiff's activities of daily living are not a clear and convincing reason to discount her statements.

### 2. Objective medical evidence

Importantly, because the other factor considered by the ALJ does not support her decision to discount Plaintiff's subjective statements, the sole remaining factor considered by the ALJ is the consistency with the objective medical evidence.[3]  (*See* Doc. 11-1 at 32.)  In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine … credibility."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  However, a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence…."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("lack of medical evidence cannot form the sole basis for discounting pain testimony").  For this reason, the ALJ's analysis is insufficient.

Moreover, even if the objective medical evidence was not the only remaining reason to discount Plaintiff's testimony, it would not constitute a "clear and convincing" reason.  Although the ALJ concluded Plaintiff's testimony was "inconsistent with the medical record because the objective clinical findings do not support the limitations alleged," and proceeded to summarize the medical

---

[3] The magistrate judge indicated "the objective evidence was not the only supportive factor the ALJ identified," and suggested the opinion of Dr. Fabella, who performed a consultative examination, was a separate factor. (Doc. 16 at 21, citing, *e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The magistrate judge noted that the Ninth Circuit held a consultative examiner's "opinion alone constitutes substantial evidence, because it rests on his own independent examination…" (*Id.*, quoting *Tonapetyan*, 242 F.3d at 1149.)  However, in *Tonapetyan*, the Ninth Circuit evaluated the circumstances under which an examining physician's opinion may be substantial evidence supporting the residual functional capacity and the ALJ's rejection limitations identified by a treating physician, who was entitled to greater weight than examining and non-examining physicians under the prior regulations.  *See Tonapetyan*, 242 F.3d at 1148-1149.  Thus, the magistrate judge's reference to *Tonapetyan* and its progeny is misplaced.  The findings of a consultative examiner, based upon testing and examination, clearly constitute "objective medical evidence." Consequently, the Court declines to consider the opinion of Dr. Fabella as a separate reason to discount Plaintiff's subjective statements.

record, the ALJ did not link Plaintiff's testimony to the summary.

Unless the ALJ links the claimant's testimony to "the observations an ALJ makes as part of the summary of the medical record," the summary is not sufficient to reject a claimant's subjective statements. *Argueta v. Colvin*, 2016 WL 4138577 (E.D. Cal. Aug. 3, 2016), citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). In addition, the district court may not review an ALJ's summary of the record to identify inconsistencies between a claimant's testimony and the record. In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F.3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that the court found gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the specific testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

The Ninth Circuit also determined an ALJ erred when discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking testimony and medical evidence in *Holcomb v. Saul*, 832 Fed. App'x. 505 (9th Cir. Dec. 28, 2020). In *Holcomb*, the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at 506. The Court found that "the ALJ discussed relevant medical evidence but failed to link Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.* The Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the relevant medical evidence." *Id.* Because the Court is constrained to the reviewing reasons identified by the ALJ for discounting testimony, the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id.* (citing *Brown-Hunter*, 806 F.3d at 494).

Likewise, here, the ALJ offered little more than a summary of the medical evidence, and she did not identify hearing testimony from Plaintiff that conflicted with this summary. The Court is unable to cure these errors. *See Brown-Hunter*, 806 F. 3d at 494; *Holcomb*, 832 Fed. App'x. at 506; *see also Marie A.G. v. Kijakazi*, 2023 U.S. Dist. LEXIS 74607, at *11 (C.D. Cal. Apr. 28, 2023) ("In

the absence of links between the ALJ's findings and Plaintiff's testimony, the Court may not infer that the ALJ's summary of the treatment record contained actual reasons for discounting Plaintiff's testimony and review them as such").

### 3. Conclusion

"General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints"). The ALJ failed to carry this burden and failed to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

## C. Remand for further proceedings

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Plaintiff requests the matter be remanded for further proceedings. (Doc. 13 at 26.)

A remand is appropriate for further consideration of the opinion of Dr. Portnoff, including clarification by the ALJ regarding the supportability factor and persuasiveness of a medical opinion. *See* 20 C.F.R. § 404.1520c(c)(1). Similarly, a remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding

"for further proceedings evaluating the credibility of [the claimant's] subjective complaints…"). Accordingly, a remand for further proceedings is appropriate in this action.

### IV.     Conclusion and Order

Pursuant to 28 U.S.C. § 636 (b)(1)(c), this Court conducted a *de novo* review of the case. Having carefully reviewed the entire matter, the Court finds the ALJ failed to apply the proper legal standards and declines to affirm the administrative decision. Thus, the Court **ORDERS**:

1. The Court declines to adopt the Findings and Recommendations (Doc. 16).
2. Plaintiff's motion for summary judgment or remand (Doc. 13) is **GRANTED**.
3. Defendant's request to affirm the administrative decision (Doc. 14) is **DENIED**.
4. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.
5. The Clerk of Court is directed to enter judgment in favor of Plaintiff Monica Martinez Leal and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 27, 2024**

_____
UNITED STATES DISTRICT JUDGE

13